Levy v Nissani (2020 NY Slip Op 00113)





Levy v Nissani


2020 NY Slip Op 00113


Decided on January 8, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 8, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JEFFREY A. COHEN
ROBERT J. MILLER
FRANCESCA E. CONNOLLY, JJ.


2018-04536
 (Index No. 709585/17)

[*1]Haim Levy, appellant, 
v
Ronen Nissani, et al., respondents.


Ginsburg & Misk LLP, Queens Village, NY (Christopher Ryan Clarke of counsel), for appellant.
Alfred E. Smith, P.C., New York, NY, for respondents.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract, the plaintiff appeals from an order of the Supreme Court, Queens County (Leonard Livote, J.), entered March 26, 2018. The order, insofar as appealed from, denied those branches of the plaintiff's motion which were for summary judgment dismissing the first and second counterclaims.
ORDERED that the order is affirmed insofar as appealed from, with costs.
The individual defendants, Ronen Nissani and David S. Nissani (hereinafter together the Nissanis), had a close social relationship with the plaintiff for many years. The Nissanis own the defendant Davron Corp., a jewelry business. From February 2015 through September 2015, the plaintiff allegedly loaned the defendants several large sums of money for the purpose of acquiring, enhancing, and reselling rare and valuable gems for a profit. When the defendants did not repay the plaintiff the full amount of the loans plus his share of the profits within the timeframe promised, the plaintiff began demanding that the defendants repay him. In July 2017, the plaintiff retained an attorney to sue the defendants.
On July 15, 2017, during a Sabbath gathering at the parties' synagogue, the plaintiff allegedly stood up at the center podium, asked for the congregants' attention, and, pointing to the Nissanis, stated that he wanted "to make an announcement for everyone to know" that "[w]e have in our synagogue two NOCHLIM," which the Nissanis claim is a Hebrew word for "scammers or con artists." The plaintiff allegedly continued: "They are David Nissani and Ronen Nissani," and "if they ask you to do any business with them, or to invest with them, then you definitely should not." After services had concluded, while the Rabbi was admonishing the plaintiff for bringing business affairs to the synagogue, the plaintiff allegedly stated in the presence of the Rabbi and the synagogue's president, "But these people are Nochlim and Ganavim," a Hebrew word for "thieves." As Ronen Nissani began to walk home from the synagogue, the plaintiff allegedly shouted at him in front of the synagogue in the presence of others that "I'm going to be on your ass until I get my money! I'm not going to leave you alone! You will see! You are thieves!"
On July 20, 2017, the plaintiff commenced this action, inter alia, to recover damages for breach of contract and fraud. In their answer, the defendants asserted, inter alia, counterclaims for defamation per se on behalf of each of the Nissanis. In the order appealed from, the Supreme Court, inter alia, denied those branches of the plaintiff's motion which were for summary judgment dismissing the first and second counterclaims, concluding that the challenged statements constituted [*2]false assertions of fact rather than mere nonactionable expressions of opinion, and were defamatory per se because they tended to injure the Nissanis in their profession. The plaintiff appeals.
The elements of a cause of action sounding in defamation are (1) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (2) published without privilege or authorization to a third party, (3) amounting to fault as judged by, at a minimum, a negligence standard, and (4) either causing special harm or constituting defamation per se (see Kasavana v Vela, 172 AD3d 1042, 1044; Stone v Bloomberg L.P., 163 AD3d 1028, 1029; Greenberg v Spitzer, 155 AD3d 27, 41). A statement is defamatory per se if it (1) charges the plaintiff with a serious crime; (2) tends to injure the plaintiff in her or his trade, business or profession; (3) imputes to the plaintiff a loathsome disease; or (4) imputes unchastity to a woman (see Liberman v Gelstein, 80 NY2d 429, 435).
"Since falsity is a necessary element of a defamation cause of action and only facts' are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action'" (Gross v New York Times Co., 82 NY2d 146, 152-153, quoting 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130, 139; see Davis v Boeheim, 24 NY3d 262, 268). Thus, "[a]n expression of pure opinion is not actionable . . . , no matter how vituperative or unreasonable it may be" (Steinhilber v Alphonse, 68 NY2d 283, 289). "A pure opinion may take one of two forms. It may be a statement of opinion which is accompanied by a recitation of the facts upon which it is based, or it may be [a]n opinion not accompanied by such a factual recitation so long as it does not imply that it is based upon undisclosed facts" (Davis v Boeheim, 24 NY3d at 269 [internal quotation marks omitted]). Conversely, "an opinion that implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, is a mixed opinion and is actionable" (id. [alterations and internal quotation marks omitted]). The latter is actionable "not because they convey false opinions' but rather because a reasonable listener or reader would infer that the speaker knows certain facts, unknown to [the] audience, which support [the] opinion and are detrimental to the person [toward] whom [the communication is directed]'" (Gross v New York Times Co., 82 NY2d at 153-154, quoting Steinhilber v Alphonse, 68 NY2d at 290).
"Whether a particular statement constitutes an opinion or an objective fact is a question of law" (Mann v Abel, 10 NY3d 271, 276; see Kamchi v Weissman, 125 AD3d 142, 157; Abakporo v Daily News, 102 AD3d 815, 816). "In distinguishing between facts and opinion, the factors the court must consider are (1) whether the specific language has a precise meaning that is readily understood, (2) whether the statements are capable of being proven true or false, and (3) whether the context in which the statement appears signals to readers [or listeners] that the statement is likely to be opinion, not fact" (Silverman v Daily News, L.P., 129 AD3d 1054, 1055; see Thomas H. v Paul B., 18 NY3d 580, 584; Mann v Abel, 10 NY3d at 276; Steinhilber v Alphonse, 68 NY2d at 292). "The essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion" (Steinhilber v Alphonse, 68 NY2d at 290).
Here, the first and second counterclaims are each predicated on the statements made by the plaintiff at the synagogue before the entire congregation, to the Rabbi and the synagogue's president, and outside the synagogue in the presence of others, that the Nissanis were "scammers" or "con artists" and "thieves," that "if they ask you to do any business with them, or to invest with them, then you definitely should not," and that "I'm going to be on your ass until I get my money . . . You are thieves."
The plaintiff failed to establish, prima facie, that these statements did not constitute false assertions of fact (see Kasavana v Vela, 172 AD3d at 1047-1048). Viewed in the context in which the allegedly defamatory statements were made, a reasonable listener would likely understand those statements to imply that the Nissanis swindled the plaintiff out of money in connection with their business (see Gross v New York Times Co., 82 NY2d at 155-156; Hoffman v Landers, 146 AD2d 744, 746). The statements can readily be proven true or false and, given the tone and overall context in which the statements were made, signaled to the average listener that the plaintiff was conveying facts about the Nissanis (see Thomas H. v Paul B., 18 NY3d at 585; Suarez v Angelet, 90 AD3d 906, 907; Harris v New York, Westchester & Boston Ry. Co., 244 AD 252).
Even if the challenged statements had not conveyed assertations of fact, they would nonetheless be actionable as mixed opinion, since a reasonable listener would have inferred that the plaintiff had knowledge of facts, unknown to the audience, which supported the assertions he made (see Gross v New York Times Co., 82 NY2d at 153-154).
The plaintiff also failed to establish, prima facie, that the challenged statements were not defamatory per se, since they charged the Nissanis with the commission of a serious crime and would tend to injure the Nissanis in their business by imputing "fraud, dishonesty, misconduct, or unfitness in conducting [their] profession" (Greenberg v Spitzer, 155 AD3d at 47 [internal quotation marks omitted]; see LeBlanc v Skinner, 103 AD3d 202, 214).
Accordingly, we agree with the Supreme Court's determination denying those branches of the plaintiff's motion which were for summary judgment dismissing the first and second counterclaims, regardless of the sufficiency of the opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
DILLON, J.P., COHEN, MILLER and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court